**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUSENCIO CAMPOS, | Case No.: 1:14-cv-00802-BAM |
| Plaintiff, | **ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**INTRODUCTION**

Plaintiff Ausencio Campos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is not based upon proper legal standards. Accordingly, the Court recommends the Commissioner's determination be REVERSED AND REMANDED for further proceedings.

1

**FACTS AND PRIOR PROCEEDINGS**

On June 28, 2011, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on May 28, 2010. AR 184-190.[1] Plaintiff's application was denied initially and on reconsideration. AR 103-106, 109-113. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Sharon L. Madsen held a hearing on November 29, 2012, and issued an order denying benefits on January 18, 2013. AR 13-65. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3, 11-12. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on November 29, 2012, in Fresno, California. AR 34-65. Plaintiff appeared and testified. He was represented by attorney Jonathan Pena. AR 36. Impartial Vocational Expert ("VE") Judith Najarian also testified. AR 36, 55-62.

Plaintiff was born in 1975. At the time of the hearing, he was 5'11" tall and weighed about 200 pounds. AR 37-38.

In response to questioning by the ALJ, Plaintiff testified that he currently receives general relief and food stamps. His worker's compensation case settled for which he received a lump sum with ongoing medical. AR 38. Plaintiff testified that he has a driver's license and drives. For his education, Plaintiff attended high school. He has not taken any vocational classes or received any licensing or certification. AR 39.

In response to questions regarding his daily activities, Plaintiff testified that he does not need any help with his personal care, such as showering and dressing. He does not do any household chores, such as washing dishes, mopping, sweeping, making his bed or cooking. He hardly does any shopping and does not have any social activities, such as church or visiting family or friends. He does not have any hobbies. On a typical day, Plaintiff mostly lies on the sofa at home. He sometimes watches TV and takes naps. AR 39-41.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

In response to questions about his work history, Plaintiff confirmed that he worked for Wal-Mart in the past. During the first couple of years working there, Plaintiff did security, patrolling in the stores and escorting people out. He mostly was outside in the parking lot. After he left security, he worked inside unloading trucks. He then did maintenance, which was janitorial work like cleaning up and waxing floors. He advanced to maintenance supervisor and was responsible for supervising the crew. Eventually, Plaintiff worked as a greeter at the door on light duty. When doing maintenance work, the heaviest amount he had to lift was about 60 or 70 pounds. When unloading trucks, the heaviest amount was about 80 pounds. AR 40-43.

In response to questions about his medical issues, Plaintiff first testified about his back. He described his back pain as constant, made worse with walking, sitting, standing and lifting. The pain goes down to both legs if his lifts 10 or 15 pounds. He does not have a position that is comfortable for him. However, if he lies down it eases the pain. Plaintiff further testified that after surgery his pain worsened. He is not interested in another surgery. He uses a cane almost all the time to help him walk. AR 43-44, 45-46.

Plaintiff also testified that his neck hurts. He has constant pain, and it hurts more when he sits down, walks around too much or stands up. The only position that is comfortable is lying down. He only takes medications for his neck. AR 45. His pain medications include Norco, cyclobenzaprine and Temazepan. Although the medications help, they make him drowsy and then the pain comes back. He sometimes uses heat or ice or Icy Hot. AR 46-47.

In response to questions about other medical issues, Plaintiff testified that his diabetes was double the normal. He takes metformin for it and tries to watch his diet. Plaintiff's blood pressure is high and he takes two medications for that. His cholesterol also is high and he has stomach issues related to the pain medication. Additionally, Plaintiff reported that he gets knee pain, his left foot is kind of numb, and he gets headaches. He does not receive any treatment for his knees. His right shoulder hurts. His elbows feel like a muscle sticks out and it pops when he moves. The doctor told him it was arthritis. His left foot is numb most of the time, but he has not been told what it is related to. AR 47-49.

Plaintiff reported that he could lift and carry about 10 to 15 pounds before he starts to get pain in his legs. He can sit for about half an hour before he has to stand up. He can stand for about 20 minutes before he has to sit down. He thinks he could walk about half a block. He has problems with bending over and squatting down. He does not really climb stairs. He does not have any problems lifting his arms over his head. AR 49-50.

In response to questions regarding his mental health, Plaintiff testified that his depression is getting worse. He used to have a lot of anxiety. He gets depressed because he cannot really do anything. He stays in bed mostly all the time now. He also has problems at home with his mom being in and out of the hospital and his sister being in the hospital. He has anxiety when he sees something he wants to do, but cannot do it. AR 50-51. He takes Abilify and Cymbalta, which help a little, and he also sees a doctor. AR 52. Plaintiff can sometimes pay attention when watching television. He manages his own money and does not have any problems getting along with other people. AR 51.

Plaintiff also answered questions from his counsel. Plaintiff testified that he experiences muscle spasms in his legs, knees and elbows. He described the pain in his back to be like burning. On an average day, his pain is about an eight or nine out of ten. The only thing to make the ache go away is to lie down on the sofa. The ache is greater if he keeps sitting down, standing up or walking around. Plaintiff reported that he will get unbalanced if he walks on grass or gravel, but he doesn't have balance trouble with other uneven ground. Plaintiff complained that he aches when it rains or it is cold. He sometimes can pick things up off the ground. He does not want any additional surgeries. He attended physical therapy in 2010 after his surgery. The cane he uses is prescribed, and he sometimes uses it inside. Plaintiff confirmed that Dr. Esposito is his treating physician. Plaintiff has been seeing him every month or month and a half since May of 2009. AR 52-55.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Judith Najarian. AR 55. The VE testified that Plaintiff's past work was classified as guard security, cleaner--commercial-industrial, supervisor janitor, laborer of stores and sales attendant. AR 56-58. The ALJ asked the VE hypothetical questions, contemplating a person of claimant's age, education, and work background. AR 58. In her first hypothetical, the ALJ asked the VE to assume a person that could lift and carry 20 pounds occasionally, 10 pounds frequently, sit, stand or walk six, with

occasional stooping, crouching, crawling, climbing, balancing, kneeling, no climbing ladders, ropes or scaffolds and must avoid concentrated exposure to heights. AR 58-59. The VE testified that such a person could perform Plaintiff's past work as a greeter or sales attendant and as security. AR 59.

In the second hypothetical, the ALJ asked the VE to consider the same person as in the first hypothetical with the addition of a sit-stand option. The VE testified that the past jobs would be eliminated, but there are others jobs with the opportunity to sit or stand, such as cashier, cashier II, storage facility rental clerk, and courier. AR 59-60.

In a third hypothetical, the ALJ asked the VE to go down to sedentary, 10 pounds, 10 pounds, sit, stand or walk two, with the same posturals. The VE testified that with occasional posturals, the full range of unskilled sedentary work would be available. Examples include an order clerk, surveillance monitor, and assembler. AR 60-61.

For the fourth hypothetical, the ALJ asked the VE to go to 10 pounds and 10 pounds, sit, stand or walk 2, with occasional squatting, kneeling, bending, no crawling, climbing or stooping. The VE testified that there would be no jobs. AR 60-61.

After the ALJ questioned the VE, Plaintiff's counsel also presented hypotheticals to the VE. Counsel asked the VE to assume the same vocational factors as hypothetical one, but this individual also has the sit-stand option, requires a cane at all times, and is going to require an additional four breaks in 30 minute durations, unscheduled. The VE testified that this individual could not perform any of Plaintiff's past relevant work or any other work. AR 61.

For the next hypothetical, counsel asked the VE to assume the same vocational factors as hypothetical number 1, but this individual would be off-task 15 percent of the time in concentration, persistence and pace. The VE testified that this person could not perform Plaintiff's past relevant work or any other work. AR 61-62.

**Medical Record**

The entire medical record was reviewed by the Court. AR 280-914. The relevant medical evidence, summarized here, will also be referenced below as necessary to this Court's decision.

On February 11, 2010, Plaintiff underwent magnetic resonance imaging of the lumbar spine, which showed a large central/left paracentral disc protrusion at L4-L5, 4 mm central disc protrusion

5

eccentric to the right side at L4-L5, and a 3 mm central disc protrusion with annular tear at L3-L4.  In March 2010, it was noted that Plaintiff received no significant improvement with an epidural steroid injection for his multilevel disc displacement.  AR 395.

On March 23, 2011, Plaintiff was prescribed a ThermoCool Compression system, back brace, front wheel walker and shower chair.  AR 742.

On April 16, 2011, Plaintiff underwent a decompressive lumbar laminectomy and disk excision at the L5-S1 level and medical facetectomy and neural foraminotomy in the left L5-S1 neural foraminal foraminotomy.  Dr. Michael Esposito, an orthopedic surgeon, performed the surgery.  AR 558.

On April 26, 2011, ten days post microscopic lumbar laminectomy and disc excision, Plaintiff reported that his bilateral leg pain was markedly improved left greater than right.  On examination by Dr. Esposito, Plaintiff could stand in an upright position and forward flex with his hands to his mid-femurs.  His straight leg raising was mildly positive at about 80 degrees for calf and foot pain on the left.  AR 548-551.

An x-ray of the lumbar spine completed on May 17, 2011 showed loss of the normal lumbar lordosis suggesting mild paraspinal muscle spasm and mild multilevel degenerative changes.  The vertebral bodies and posterior elements demonstrated satisfactory alignment with no acute fracture or dislocation.  AR 735.

On May 24, 2011, Dr. Esposito prescribed a walking cane.  AR 539.

On June 12, an unidentified physician opined that Plaintiff could not work due to depression, insomnia and poor concentration.  The physician opined that this condition, which began on June 15, 2012, was temporary and expected to last until December 30, 2012.  AR 912-913.

On June 21, 2011, Plaintiff reported slow improvement of his left leg pain following his lumbar laminectomy and disc excision.  On examination by Dr. Esposito, Plaintiff could stand in an upright position and forward flex with his hands to about his knees.  He used a mild upper extremity assist to come to an upright position.  His extension was limited to 5 degrees with pain in the gluteal region.  Straight leg raising was minimally positive at 85 degrees for calf and foot pain on the left. Dr. Esposito opined that this had improved since the preoperative state.  Plaintiff's anti-inflammatory

medication was renewed and he was to attend physical therapy twice a week. Dr. Esposito also prescribed Restoril for sleep. AR 522-526.

On March 23, 2012, Dr. Esposito completed a Physical Capacities Evaluation form. Dr. Esposito opined that Plaintiff could sit, stand, and walk two hours each in an 8-hour workday, but must alternate sitting and standing every 1 to 2 hours to relieve pain. He occasionally could lift 11-20 pounds, but never lift more than that amount. He also occasionally could bend, squat, crawl, climb, kneel and stoop. Dr. Esposito restricted Plaintiff from any prolonged sitting or standing, any lifting and repetitive bending. AR 752-753.

On July 20, 2012, Dr. Esposito opined that Plaintiff could perform no work, but also indicated that Plaintiff's medical condition permitted him to perform gardening/maintenance and restricted work sedentary/clerical. Dr. Esposito estimated that Plaintiff's incapacity would end or a reevaluation would be required on December 31, 2012. AR 914.

On August 28, 2012, Plaintiff sought follow-up treatment from Dr. Esposito. Plaintiff complained of persistent pain in his low back with radiating pain into both legs into the posterior thighs and knees, left worse than right, worse with prolonged sitting, standing and repetitive bending. On examination, Plaintiff had focal tenderness, left greater than right, over the L3-4, L4-5 and L5-S1 posterior spinous processes and paraspinal muscles. When standing in an upright position, Plaintiff could forward flex with his hands to his knees and used a mild upper extremity assist to come to an upright positon. Extension was limited to 10 degrees with pain into both gluteal regions. Straight leg raising was positive on the right at about 80 degrees for calf and foot pain. It was negative on the left to about 85 degrees, but with backache. Dr. Esposito renewed Plaintiff's Flexeril, Norco, Relafen, Prilosec and Restoril. Plaintiff did not wish to proceed with epidural steroid injections, feeling he could live with his limitations as long as he could manage his symptoms with medications. Dr. Esposito noted that Plaintiff had been released to sedentary work. AR 884-887.

On August 29, 2012, Dr. Esposito completed another Physical Capacities Evaluation form. Dr. Esposito opined that Plaintiff could sit, stand and walk 2 hours each in an 8-hour workday and must periodically alternate sitting and standing every 1 to 2 hours. Plaintiff occasionally could lift or carry 11-20 pounds, but never lift or carry more than that. He occasionally could bend, squat and kneel, but

7

never crawl, climb or stoop. Dr. Esposito restricted Plaintiff from any prolonged sitting or standing and any lifting or repetitive bending. AR 888-889.

On September 17, 2012, Dr. Esposito completed a third Physical Capacities Evaluation form. Dr. Esposito opined that Plaintiff could sit, stand and walk 2 hours each in an 8-hour workday, but must alternate sitting and standing every 1 to 2 hours. He occasionally could lift 11-20 pounds, but never more than that amount. He occasionally could bend, squat, kneel and stoop, but never crawl or climb. Dr. Esposito restricted Plaintiff from any prolonged sitting or standing and any lifting or repetitive bending. AR 910-911.

On November 27, 2012, Licensed Clinical Social Worker N. Gram opined that Plaintiff was unable to work due to depression and auditory hallucinations, which affect his concentration, memory, judgment and decision-making abilities. Social Worker Gram expected Plaintiff to be able to return to work in November 2013. AR 278-279.

On November 28, 2012, Dr. Esposito opined that Plaintiff was not able to work and remained totally disabled. Dr. Esposito identified the onset date as July 14, 2004, and expected Plaintiff could return to work on February 28, 2013. AR 276-277.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 16-25. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 28, 2010, his alleged onset date. AR 18. Further, the ALJ identified degenerative disc disease of the lumbar and cervical spine and status post lumbar laminectomy and disc excision as severe impairments. AR 18-10. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 20. Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. Plaintiff could lift and/or carry ten pounds frequently, twenty pounds occasionally, could sit, stand and/or walk for six hours out of an eight-hour workday, could occasionally stoop, crouch, crawl, climb, balance and kneel. He could never climb ladders, ropes or scaffolds and must avoid concentrated exposure to heights. He also required a sit-stand option. AR 20-24. The ALJ found that Plaintiff could not perform any of his

past relevant work, but could perform jobs that exist in significant numbers in the national economy. AR 24-25. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In his opening brief, Plaintiff contends that the ALJ erred in (1) rejecting the opinion of Plaintiff's treating physician; and (2) evaluating Plaintiff's credibility.

## **DISCUSSION[2]**

### **1.  The ALJ Failed to Fully Develop the Record and Weigh the Medical Evidence**

Plaintiff's primary challenge is that the ALJ failed to adequately develop the record, which undermines the ALJ's determination that the opinion of Plaintiff's treating physician, Dr. Esposito, is inconsistent with the treatment notes and objective medical evidence.  Plaintiff also contends that the ALJ's reasons for rejecting Dr. Esposito's opinions are not specific and legitimate.  (Doc. 14 at 9-12.)

The ALJ reviewed and evaluated Dr. Esposito's opinion as follows:

> The reports of M. Esposito, M.D., were prepared in the context of the adversarial workers' compensation claim system (Exhibit 15F, 17F, 22F, 25F, 27F, 37F, 38F, and 40F).  Medical reports generated in the context of a workers' compensation claim are adversarial in nature.  The physicians retained by either party in the context of worker's compensation cases are often biased and do not provide truly objective opinions.  The claimant's treating physician in the context of a workers' compensation claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery.  In addition, the definition of disability in a workers' compensation case is not the same as a Social Security disability case.  Workers' compensation cases look only at the claimant's ability to return to the job being performed at the time of the injury.  Finally, whether the claimant is "disabled" is a determination reserved to the Commissioner . . . .  Therefore, the credibility and relevance of the opinions of Dr. Esposito must be carefully assessed because of the involvement with the workers' compensation claim.
>
> The undersigned has read and considered the statement by the physician involved in the workers' compensation case, Dr. Esposito and N. Grams, LCSW, indicating the claimant was "temporarily totally disabled" (Exhibits 20 E and 29F).  The undersigned finds this conclusion has no probative value and rejects this evidence.  The term "temporarily totally disabled" is a term of art in workers' compensation law that is not determinative under the criteria for finding of disability pursuant to the Social Security Act.  Therefore, the conclusion by a physician the claimant is "temporarily totally disabled" in the context of a workers' compensation case is not relevant with regard to the claimant's applications under the Social Security Act.
>
> The undersigned has considered and gives little weight to Dr. Esposito, who filled out physical capacities evaluations on March 23, 2012, August 29, 2012, and September 17,

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

> 20a2; and stated he had released the claimant [to] sedentary work on August 28, 2012, but there was no job available to him at that time (Exhibits 29 F; 37 F, p. 3; 38F; and 40F). As on opinion on an issue reserved to the Commissioner, this statement that [the] claimant had no job available to him is not entitled to controlling weight and is not given special significance pursuant to 20 CFR 404.1527(e) and 416.927(e) and SSR 96-5. Dr. Esposito primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but he did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision, which show mild changes. This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision. Therefore, Dr. Esposito is given little weight.

AR 23.

Plaintiff argues the ALJ's finding that Dr. Esposito's treatment notes were inconsistent with his opinions should have triggered her duty to develop the record. An ALJ's duty to develop the record is triggered if there is ambiguous evidence or the record is inadequate for proper evaluation of evidence. When such a duty is triggered, an ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); 20 C.F.R. § 404.1517.

In this instance, the Court finds that the ALJ's duty to develop the record was triggered when she found Dr. Esposito's opinion unsupported by objective clinical or diagnostic findings, but thereafter failed to either request additional information from Dr. Esposito or order a consultative examination. The Court agrees with Plaintiff that the ALJ should have further developed the record in this instance. The ALJ's failure is compounded, as discussed below, by the ALJ's apparent decision to *not* rely upon or assign controlling weight to any other medical opinion evidence. AR 22-23. An "ALJ's RFC determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician." *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006). Here, the ALJ either rejected or assigned little weight to medical opinions. AR 23. Indeed, the

ALJ even ignored opinions in the record rendered by state agency physicians regarding Plaintiff's RFC.  AR 70-73 [Dr. K. Quint]; 91-93 [Dr. M. Bayar].

Furthermore, as Plaintiff suggests, it is apparent that the ALJ improperly substituted her lay opinion for that of the medical experts. *See generally, Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir.1999) (ALJ may not substitute his own opinion instead of relying on the opinions of medical professionals); *Banks*, 434 F.Supp.2d at 805 ("ALJ cannot arbitrarily substitute his own judgment for competent medical evidence [ ], and he must not succumb to the temptation to play doctor and make his own independent medical findings"). As noted, the ALJ rejected the opinion of Dr. Esposito because it was inconsistent with the medical record.  However, it appears from the ALJ's decision that she was the only person to interpret Dr. Esposito's treatment records, and as a result, this finding is based solely on the ALJ's own lay interpretation of the medical evidence. "The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert." *Winters v. Barnhart*, No. C 02-5171SI, 2003 WL 22384784, at *6 (N.D. Cal. Oct.15, 2003); *see also Gonzalez Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician"). Because the ALJ's assessment of Dr. Esposito's opinion lacks a medical foundation, it represents an improper substitution of the ALJ's lay judgment for that of a medical expert. For this reason, the ALJ erred in failing to direct a medical expert to review all of the medical evidence or otherwise develop the record.

An ALJ's decision may be set aside due to her failure to develop the record if the claimant can demonstrate prejudice or unfairness as a result of the failure. *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1991).  Here, the ALJ relied on her own view of the medical record; this improper determination does not represent a fair assessment of Plaintiff's impairments. For these reasons, the ALJ failed her duty to fully develop the record and her resulting efforts to weigh the incomplete medical evidence are therefore erroneous. This matter will be remanded to allow the whole record to be fully and properly developed and addressed by the ALJ in evaluating the medical opinions and the resulting residual functional capacity.

Additionally, the Court finds that the ALJ's other purported reasons for rejecting Dr. Esposito's opinion, including assertions of advocacy on Plaintiff's behalf, opinions rendered in the

workers' compensation context, disability opinions reserved to the Commissioner, and Plaintiff's daily activities, are not specific and legitimate. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."). First, the ALJ's contention that Dr. Esposito's opinion should be "carefully assessed" based on an implication that Dr. Esposito acted as a workers' compensation advocate for Plaintiff and described limitations to enhance Plaintiff's financial recovery is mere conjecture. Nothing in Dr. Esposito's opinions or treatment notes suggests advocacy or enhanced limitations for the purpose of recovery. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (source of referral relevant where there is no objective medical basis for the opinion and there is evidence of actual improprieties on the part of the doctor whose report the ALJ chooses to reject.)

Second, an "ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a workers' compensation proceeding, or because it was couched in the terminology used in such proceedings." *See Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) (citing *Coria v. Heckler*, 750 F.2d 245, 247-48 (3d Cir. 1984)).

Third, an ALJ may not reject the report of a treating physician merely because a workers' compensation determination may not be controlling on the ultimate issue of disability. *See Franco v. Colvin*, No. 1:12-CV-01267-SMS, 2014 WL 790912, *18 (E.D. Cal. Feb. 26, 2014) (citing *Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996) ("That workers' compensation determinations are not controlling on the ultimate issue of disability does mean that an ALJ can ignore the report of the physician making the determination.").

Fourth, and finally, the ALJ's reliance on Plaintiff's report of daily activities to demonstrate inconsistency with Dr. Esposito's opinion is unsupported. In this instance, the ALJ cites Plaintiff's admission of activities that included "taking care of his personal needs, and preparing microwave meals," "walk[ing] around daily, and [picking] up trash on the lawn." AR 19. The ALJ did not explain how these minimal daily activities are inconsistent with Dr. Esposito's opinion. Moreover, the evidence does not demonstrate that these limited activities took up a "substantial part" of Plaintiff's day or that they would be "transferable to the work setting." *Vertigan v. Halter*, 260 F.3d 1044, 1049

(9th Cir. 2001); *cf. Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding credibility determination where ALJ found claimant's daily activities, which included cooking, house cleaning, doing laundry and helping manage finances, suggested she may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis).

### 2. Remand is Required

The Court has considered Plaintiff's request to award benefits rather than remand the case for additional proceedings, but finds remand more appropriate. The circumstances of this case indicate that there are outstanding issues that must be resolved before a final determination can be made. Further administrative review may remedy the ALJ's errors and thus remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *see Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option where the ALJ fails to state sufficient reasons for rejecting a claimant's excess symptom testimony); *see also Garrison v. Colvin*, 759 F.3d 995, (court may "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").

Additionally, because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the ALJ's credibility determination. In light of the Court's finding that the ALJ failed to properly evaluate the opinion of Dr. Esposito and develop the record, and because credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded. The Court need not consider Plaintiff's arguments regarding credibility in light of the need for reversal on other grounds. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings. On remand, the ALJ will reweigh the medical evidence and address the deficiencies

identified by the Court. Additionally, although not addressed in this Order, on remand the Commissioner shall reevaluate Plaintiff's subjective symptom testimony in light of reweighing the medical evidence. If necessary, the Commissioner may hold further hearings and receive additional evidence.

Accordingly, the Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff Ausencio Campos and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   <u>September 25, 2015</u>                              /s/ Barbara A. McAuliffe
                                                              UNITED STATES MAGISTRATE JUDGE